1

2

3                          UNITED STATES DISTRICT COURT

4                         NORTHERN DISTRICT OF CALIFORNIA

5

6    FORTUNE PLAYERS GROUP, INC., et
     al.,                                        Case No. 16-cv-00800-TEH
7
                   Plaintiffs,
8                                                **ORDER GRANTING IN PART AND
             v.                                  DENYING IN PART DEFENDANTS'
9                                                MOTION TO DISMISS**
     WAYNE QUINT, JR., et al.,
10
                   Defendants.
11

12          This matter came before the Court on June 20, 2016 for a hearing on Defendants'

13   motion to dismiss.  Having carefully considered the parties' written and oral arguments,

14   the Court now GRANTS IN PART AND DENIES IN PART Defendants' motion for the

15   reasons set forth below.

16

17   **FACTUAL BACKGROUND** [1]

18          Plaintiff Fortune Players Group, Inc. ("Fortune Players Group") is a California

19   corporation engaged in the business of third party propositional player services.  Compl. ¶

20   3 (Docket No. 1).  Plaintiffs Angelita De Los Reyes and Vanessa Parungao are employees

21   of Fortune Players Group and perform clerical and administrative functions.  *Id.* ¶ 4.

22   Defendant Wayne Quint, Jr. is the Bureau Chief for the Bureau of Gambling Control (the

23   "Bureau") for the State of California, and is responsible for all investigatory functions as

24   required under the Gambling Control Act, as set forth in California Business and

25   Professions Code Section 19800 *et seq*.  *Id.* ¶ 5.  The individual defendants are Special

26   Agents and Licensing Unit Employees for the Bureau.  *Id.* ¶¶ 6-7.

27

28   _____

[1]     Unless otherwise indicated, all facts in this section are found in the Complaint
     ("Compl."), and are accepted as true for the purposes of this motion.

*United States District Court*
*Northern District of California*

United States District Court
Northern District of California

1     Beginning in 2010, Fortune Players Group contracted with Lucky Chances Casino,

2   a licensed gambling establishment located in Colma, California. *Id.* ¶ 11.  Both Fortune

3   Players Group and Lucky Chances Casino are regulated by the Bureau. *Id.* ¶ 12.  Rene

4   Medina, who is not a party to this lawsuit, previously owned an interest in Lucky Chances

5   Casino, but sold his interest in 2007. *Id.* ¶ 16.  Medina's license prohibits him from

6   entering, being present in, or in any way patronizing (a) the areas within Lucky Chances

7   Casino in which controlled gambling is conducted or (b) any other areas related to the

8   gambling operation. *Id.*  These licensing conditions do not apply to Fortune Players

9   Group, and Medina has never owned an interest in Fortune Players Group. *Id.*  On July 1,

10  2014 the Department of Fair Employment and Housing filed a lawsuit in San Mateo

11  County Superior Court on behalf of Fortune Players Group employee Maria Escueta,

12  alleging she was denied a promotion because of discrimination and retaliation. *Id.* ¶ 13.

13  During testimony at trial, a witness indicated that Medina somehow controlled the

14  operations of both Fortune Players Group and Lucky Chances Casino. *Id.* ¶ 14.

15     On October 15, 2015, six Special Agents of the Bureau of Gambling Control and

16  two licensing unit employees entered the offices of Fortune Players Group without an

17  appointment or warrant. *Id.* ¶ 19.  Plaintiffs Parungao and De Los Reyes were present at

18  the office, and were photographed and questioned while the Fortune Players Group offices

19  were searched. *Id*. ¶¶ 20-23.  During the search, neither Parungao nor De Los Reyes were

20  permitted to leave or to answer ringing business phones, and they were only permitted to

21  use the restroom upon request and with an escort. *Id*. ¶¶ 24-26.  Defendant Special Agent

22  Yolanda Sanchez instructed De Los Reyes to open her cell phone, then Sanchez, along

23  with Defendant Special Agent Aaron Wong, copied and forwarded some of De Los Reyes'

24  private messages. *Id*. ¶ 27.  The search and seizure lasted nearly 5 hours. *Id*. ¶ 29.

25  Plaintiffs contend that Defendants seized not only the property of Fortune Players Group

26  but also the personal property of Parungao and De Los Reyes. *Id.* ¶ 23.

27

28  ///

2

United States District Court
Northern District of California

1   **LEGAL STANDARD**

2      Dismissal is appropriate under Federal Rule of Civil Procedure 12(b)(6) when a

3   plaintiff's allegations fail "to state a claim upon which relief can be granted."  To survive a

4   motion to dismiss, a plaintiff must plead "enough facts to state a claim to relief that is

5   plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 547, 570 (2007).  "The

6   plausibility standard is not akin to a 'probability requirement,' but it asks for more than a

7   sheer possibility that a defendant has acted unlawfully."  *Ashcroft v. Iqbal*, 556 U.S. 662,

8   678 (2009).  "A claim has facial plausibility when the plaintiff pleads factual content that

9   allows the court to draw the reasonable inference that the defendant is liable for the

10  misconduct alleged."  *Id.*  Such a showing "requires more than labels and conclusions, and

11  a formulaic recitation of the elements of a cause of action will not do."  *Twombly*, 550 U.S.

12  at 545, 555.

13     In ruling on a motion to dismiss, a court must "accept all material allegations of fact

14  as true and construe the complaint in a light most favorable to the non-moving party."

15  *Vasquez v. Los Angeles Cty.*, 487 F.3d 1246, 1249 (9th Cir. 2007).  Courts are not,

16  however, "bound to accept as true a legal conclusion couched as a factual allegation."

17  *Iqbal*, 556 U.S. at 678 (citation omitted).  Any dismissal should be with leave to amend,

18  unless it is clear that amendment could not possibly cure the complaint's deficiencies.

19  *Steckman v. Hart Brewing, Inc.*, 143 F.3d 1293, 1296, 1298 (9th Cir. 1998).

20

21  **DISCUSSION**

22     Defendants filed the instant motion to dismiss on April 12, 2016.  Docket No. 16.

23  Plaintiffs timely opposed (Docket No. 20), and Defendants timely replied (Docket No. 21).

24  Defendants move to dismiss all remaining claims in the Complaint.[2]  The Court will

25  address each remaining claim in turn.

26

27  _____

    [2]   On May 9, 2016, the Court approved the parties' stipulation to dismiss Plaintiffs'
    claims for monetary damages without prejudice.  Docket No. 19.  Accordingly, the Court
28  will not address arguments in Defendants' motion that relate only to the damages claims
    (Plaintiffs' Fifth, Sixth, Seventh and Eighth Claims for Relief).

# I.   FACIAL CHALLENGES TO SECTION 19827

At the outset, the Court notes that it may consider a constitutional challenge to a statute on a motion to dismiss, so long as the consideration does not go beyond the four corners of the Complaint, or any documents attached thereto or incorporated by reference therein. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007). The statute at issue provides in pertinent part:

> (a) The department has all powers necessary and proper to enable it to carry out fully and effectually the duties and responsibilities of the department specified in this chapter. The investigatory powers of the department include, but are not limited to, all of the following:
>
> (1) Upon approval of the chief, and without notice or warrant, the department may take any of the following actions:
>
> […]
> (D) Summarily seize, remove, and impound any equipment, supplies, documents, or records from any licensed premises for the purpose of examination and inspection. However, upon reasonable demand by the licensee or the licensee's authorized representative, a copy of all documents and records seized shall be made and left on the premises.
>
> […]
>
> (b)    (1) Subdivision (a) shall not be construed to limit warrantless inspections except as required by the California Constitution or the United States Constitution.

Cal. Bus. & Prof. Code § 19827 ("Section 19827").


## A.   Fourth Amendment Challenge

Plaintiffs' First Claim for Relief, under 42 U.S.C. § 1983 ("Section 1983"), is a facial challenge to Section 19827, on the basis that the statute violates the Fourth Amendment. The Fourth Amendment protects citizens from "unreasonable searches and seizures," and states that "no Warrants shall issue, but upon probable cause." *See* U.S. Const. amend. IV. The Fourth Amendment encompasses search of homes as well as commercial premises. *See, e.g., City of Los Angeles v. Patel*, --- U.S. ---, 135 S.Ct. 2443, 2451-52; *New York v. Burger*, 482 U.S. 691, 699-700. The Supreme Court has approved

4

1    certain exceptions to the Fourth Amendment's warrant and probable cause requirements,

2    including administrative searches of businesses in closely regulated industries.  *See*

3    *Burger*, 482 U.S. at 702.

4                  ***1.        Gambling is a "closely regulated industry" under* Burger.**

5           The exception to the warrant requirement for "closely regulated industries" stems

6    from the Fourth Amendment's concept of an individual's reasonable expectation of

7    privacy.  Industries with a history of close regulation and oversight have a lessened

8    expectation of privacy, and persons who choose to engage in business in these industries

9    are aware of as much.  *See Marshall v. Barlow's, Inc.*, 436 U.S. 307, 313 (1978); *Burger*,

10   482 U.S. at 702.

11          The Supreme Court has only expressly found four industries to be so closely

12   regulated "that no reasonable expectation of privacy . . . could exist for a proprietor over

13   the stock of such an enterprise."  *Patel*, 135 S. Ct. at 2454-55 (internal quotation marks

14   omitted).  The four industries are: (1) liquor sales, *Colonnade Catering Corp. v. United*

15   *States*, 397 U.S. 72 (1970); (2) firearms dealing, *United States v. Biswell*, 406 U.S. 311

16   (1972); (3) mining, *Donovan v. Dewey*, 452 U.S. 594 (1981); and (4) running an

17   automobile junkyard, *New York v. Burger*, 482 U.S. 691 (1987).  However, these four

18   industries are by no means exclusive.  The Ninth Circuit has upheld warrantless

19   inspections in other closely regulated industries, including: home daycare businesses, *Rush*

20   *v. Obledo*, 756 F.2d 713 (9th Cir. 1985); hazardous materials transportation, *United States*

21   *v. V-1 Oil Co.*, 63 F.3d 909 (9th Cir. 1995); and veterinary drugs, *United States v. Argent*

22   *Chem. Labs., Inc.*, 93 F.3d 572 (9th Cir. 1996).[3]  Furthermore, other circuit courts and

23   district courts have found several other industries to be closely regulated.

24

25

26   _____

     [3]      The Ninth Circuit in *V-1 Oil Co.* and *Argent Chemical* specifically discusses
27   *Burger*.  *V-1 Oil*, 63 F.3d at 911-12; *Argent Chem.*, 93 F.3d at 575.  While the Court notes
     that *Rush* was decided prior to *Burger,* the Ninth Circuit in *Rush* discusses the "pervasively
28   regulated business exception" or the "*Colonnade-Biswell* line of cases" which served as
     predecessors to the test articulated in *Burger*.  *Rush*, 756 F.2d at 718.

United States District Court
Northern District of California

United States District Court
Northern District of California

1          Fortune Players Group is a provider of third party propositional services ("TPPS").

2     TPPS providers enter into contracts with card rooms, whereby their players participate in

3     certain games in order to provide the capacity to cover bets made by patrons of the card

4     rooms.  In supplemental briefing, Plaintiffs point out that the statutory definition of

5     "gambling business" does not include TPPS.  Pls.' Supp. Brief at 3 (Docket No. 31).

6     However, demonstrating that TPPS are not "gambling businesses" does not necessitate a

7     finding that they are not involved in the gambling industry.[4]

8          TPPS providers such as Fortune Players Group are regulated by the Gambling

9     Control Act and its accompanying regulations.  *See* Cal. Bus. & Prof. Code § 19800 *et seq*;

10    Cal. Code Regs. tit. 4 § 12002 *et seq*.  These statutes and regulations provide that the TPPS

11    providers must be licensed and registered, and display identification while present in

12    gambling establishments.  Cal. Bus. & Prof. Code § 19984(b); Cal Code Regs. tit. 4 §§

13    12201-12203.3, 12218-122181.3.  TPPS providers must further maintain specified records.

14    Cal. Bus. & Prof. Code § 19984(b); Cal. Code Regs. tit. 4 §§ 12200.13, 12200.16.  If the

15    TPPS providers do not comply with requirements imposed by the applicable laws, they

16    risk having their licenses revoked.  Cal. Code Regs. tit. 4 § 12200.18.

17         The statutes and regulations governing Fortune Players Group and other TPPS

18    providers are part of a larger comprehensive framework, which the Gambling Control Act

19    itself refers to as the "strict regulation of licensed gambling."  *See* Cal. Bus. & Prof. Code

20    § 19801(m).  The Gambling Control Act was enacted for the specific purpose of providing

21    a scheme of statewide regulation of gambling to replace its less comprehensive

22    predecessor, the Gaming Registration Act.  Such strict, comprehensive regulation means

23    that anyone engaging in business in the gambling industry has a weakened expectation of

24    privacy, because when s/he "chooses to engage in this pervasively regulated business,"

25

26    ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯
      [4]     Similarly, while some provisions of the Gambling Control Act refer to TPPS
27    providers as providing a "players bank," the Court is not convinced that analogizing
      Fortune Players Group as a bank makes any meaningful difference, as the TPPS provider
28    remains regulated by the Gambling Control Act along with other participants in the
      gambling industry.

1    s/he must know that his/her business is subject to inspection.  *Biswell*, 406 U.S. at 316.

2    Other courts have also found the gambling industry to be closely regulated, for the same

3    reasons.  *See Rivera-Corraliza v. Morales*, 794 F.3d 208, 219 (1st Cir. 2015); *In re Martin*,

4    90 N.J. 295, 310-13 (1982).

5         Accordingly, because of the comprehensive regulatory framework under which

6    businesses in the gambling industry must operate, the Court finds that Fortune Players

7    Group has a reduced expectation of privacy in this closely regulated industry.

8              *2.        Section 19827 passes muster under the Burger test.*

9         Having determined that the gambling industry is a closely regulated industry under

10   *Burger*, the Court now considers whether Section 19827 meets the three criteria articulated

11   in *Burger*: (1) "[T]here must be a 'substantial' government interest that informs the

12   regulatory scheme pursuant to which the inspection is made"; (2) "the warrantless

13   inspections must be 'necessary' to further [the] regulatory scheme"; and (3) "the statute's

14   inspection program, in terms of the certainty and regularity of its application, [must]

15   provid[e] a constitutionally adequate substitute for a warrant."  *Burger*, 482 U.S. at 702-03

16   (internal quotation marks omitted).

17        First, the Court finds that California has a "substantial interest" in regulating the

18   gambling industry.  This governmental interest is expressed in policy statements by the

19   California Legislature, and identified by other courts analyzing the gambling industry.  *See*

20   Cal. Bus. & Prof. Code § 19801(i) ("all persons having a significant involvement in

21   gambling operations . . . must be licensed and regulated to protect the public health, safety,

22   and general welfare of the residents of this state"); *Posadas de Puerto Rico Assoc. v.*

23   *Tourism Co. of Puerto Rico,* 478 U.S. 328 (1986) (holding that Puerto Rico's desire to

24   limit casino gambling, to protect the health, safety, and welfare of its residents, constituted

25   a "substantial government interest").[5]

26

27   _____

    [5]     The Court finds that Plaintiffs' argument that *Posadas* is inapposite because it dealt
with the First Amendment to be a distinction without a difference.  The Court's inquiry is

28   whether the interest is a "substantial government interest;" the ensuing test, and under
which Amendment it falls, makes no difference with regard to that inquiry.

United States District Court
Northern District of California

1    The Court sees no reason to require, as Plaintiffs suggest, that the interest be

2    articulated more specifically than health, safety and protection of the public, or for the

3    statutory language to specify "whether the warrantless search provisions in Section 19827

4    are aimed at administrative regulations such as record keeping, discovery of criminal

5    activity by personnel or patrons, all the above, or some other purpose." Opp'n at 5.

6    Notably, in Plaintiffs' supplemental briefing, Plaintiffs state that the California Gambling

7    Control Commission stated that "[p]roposition player services are required to maintain

8    records in order to provide an audit trail which will facilitate detection of money

9    laundering and other illegal activities." Pls.' Supp. Brief at 1. As the Supreme Court

10   found in *Burger*, this Court finds that – in addition to the more general health, safety and

11   protection interests – prevention of illegal activities is a substantial government interest.

12   *Burger*, 482 U.S. at 708 ("automobile theft has become a significant social problem,

13   placing enormous economic and personal burdens upon the citizens of different States").

14   Second, the Court finds that warrantless inspections under Section 19827 are

15   necessary to further the regulatory scheme. The Court agrees with Plaintiffs that the health

16   and safety risks associated with unregulated gambling are not akin to the obvious hazards

17   of firearms, liquor, or mining. However, considering that one of the purposes of regulating

18   the gambling industry is to ensure that unauthorized people are not involved in the

19   industry, it appears to the Court that "a system of warrantless inspections [is] necessary 'if

20   the law is to be properly enforced and inspection made effective.'" *Donovan v. Dewey*,

21   452 U.S. 594, 602-03 (1981) (quoting *Biswell*, 406 U.S. at 316).

22   Similar to automobile junkyards in *Burger*, the gambling industry may serve as an

23   easy target for criminal activity – even large-scale organized crime. *See*, *e.g.*, Cal. Bus. &

24   Prof. Code § 19801 (g), (h) (the "public trust" requires "that gambling is free from

25   criminal and corruptive elements, and that it is conducted honestly and competitively").

26   Also akin to *Burger*, the evidence of crime in card rooms is fleeting; therefore, it may be

27   necessary to conduct searches and seizures without obtaining a warrant. *Burger*, 482 U.S.

28   at 710. Finally, the Court finds that in an industry susceptible to such crime and

United States District Court
Northern District of California

8

United States District Court
Northern District of California

1    corruption, the element of surprise may be necessary to effectuate the purpose of the

2    statute.[6] *Biswell*, 406 U.S. at 316 ("In this context, the prerequisite of a warrant could

3    easily frustrate inspection; and if the necessary flexibility as to time, scope and frequency

4    is to be preserved, the protections afforded by the warrant would be negligible.").

5    Therefore, the Court finds that the warrantless inspections permitted by Section 19827

6    advance some of the regulatory purposes of the Gambling Control Act and its regulations.

7           Third, and finally, the Court finds that the warrantless inspection regime serves as a

8    constitutionally adequate substitute for a warrant. The *Burger* Court specified that to

9    constitutionally adequate, a warrantless inspection regime must serve the purposes of a

10   warrant, by providing notice and limiting the inspecting officers' discretion. *Burger*, 482

11   U.S. at 711. Plaintiffs contend that Section 19827 allows for "arbitrary and discretionary"

12   warrantless inspections, and affords the Bureau "unfettered discretion." Opp'n at 10.

13   However, Defendants point out several aspects of Section 19827 that limit the discretion of

14   the inspecting officers. Mot. at 11.

15          The statute itself provides notice to Fortune Players Group and other businesses

16   participating in the gambling industry that they are subject to warrantless inspections. The

17   statute further limits the scope of the search: Bureau personnel will inspect the "papers,

18   books and records of an owner licensee;" the inspection will take place at the "licensed

19   premises;" and because the inspection must take place in the presence of an employee, it

20   therefore may only take place during business hours. Cal. Bus. & Prof. Code §

21   19827(a)(1)(E). The Court finds that these safeguards sufficiently limit the discretion of

22   the inspecting agents, and provides sufficient notice to TPPS providers that they may be

---

24   6      The Court acknowledges the similarities between the hotel guest books at issue in
     *Patel* and the record-keeping requirements imposed on TPPS providers. However, while
25   the Supreme Court in *Patel* found that the warrantless inspection regime failed the second
     prong of the *Burger* test, *see Patel*, 135 S. Ct. at 2456, the hotel industry is not a closely
26   regulated industry and is not subject to the comprehensive requirements and numerous
     governmental interests to which the gambling industry is subjected. The Court also finds
27   that the connection between the governmental interests in honest recordkeeping in the
     gambling industry is much less attenuated than in the hotel industry, as the recordkeeping
28   requirements are directly connected with the legislative purpose to keep certain individuals
     out of businesses in the gambling industry.

1    searched without a warrant, and what the nature and scope of the search may be.

2        The Court disagrees with Plaintiffs' contention that *Burger* somehow requires a

3    showing that inspections are conducted on a regular basis.  Opp'n at 10.  While the *Patel*

4    Court uses the phrase "certainty and regularity," *Patel*, 135 S. Ct. at 2456, nowhere in the

5    *Burger* Court's pronouncement of its three-part test does it impose such a specific

6    requirement.  Rather, the proper inquiry for the Court is whether the statute provides a

7    "constitutionally adequate" warrant substitute.  *Burger*, 482 U.S. at 711.  As discussed

8    above, Section 19827 does in fact provide such constitutional safeguards.

9        For these reasons, the Court finds that for purposes of the Fourth Amendment,

10   Section 19827 is constitutional on its face as a matter of law, because gambling is a closely

11   regulated industry and the statute passes muster under the *Burger* test.  Therefore,

12   Plaintiffs' First Claim for Relief is hereby DISMISSED.  Because the claim's deficiencies

13   could not be cured by amendment, the dismissal is with prejudice.

14

15       **B.      Fourteenth Amendment Challenge**

16       Plaintiffs' Second Claim for Relief, under Section 1983, is a facial challenge to

17   Section 19827 based on a violation of the Fourteenth Amendment (Due Process Clause).

18   This claim must be dismissed, because there is no procedural due process requirement

19   when the government seizes property for investigatory purposes, as opposed to seizing

20   property to assert ownership and control over the property.  *United States v. James Daniel*

21   *Good Real Prop.*, 510 U.S. 43, 52 (1993).  Thus, no process is due in a seizure under

22   Section 19827, and the facial challenge under the procedural due process clause must fail.

23       Similarly, a facial challenge under the substantive due process clause must fail

24   because, as discussed above, the California Legislature identified a substantial government

25   interest served by Section 19827.  *Nicholas v. Pennsylvania State Univ.*, 227 F.3d 133, 139

26   (3d Cir. 2000) ("Typically, a legislative act will withstand [a] substantive due process

27   challenge if the government 'identifies the legitimate state interest that the legislature

28

United States District Court
Northern District of California

10

1    could rationally conclude was served by the statute.").  Plaintiffs do not meaningfully

2    oppose either of these legal proposition in opposition.

3            For these reasons, Plaintiffs' Second Claim for Relief fails as a matter of law and is

4    hereby DISMISSED.  Because the claim's deficiencies could not be cured by amendment,

5    the dismissal is with prejudice.

6

7    **II.      AS-APPLIED CHALLENGES TO THE SEARCH/SEIZURE AT ISSUE**

8            Merely finding Section 19827 constitutional on its face does not mean that every

9    warrantless search and seizure conducted pursuant to the statute is automatically

10   constitutional.  Plaintiffs' Third and Fourth Claims for Relief are as-applied challenges,

11   under Section 1983, to Section 19827 for violations of the Fourth and Fourteenth

12   Amendments.  In an as-applied challenge, "there is a narrow focus on the particular

13   plaintiff's behavior and whether the statute is constitutional as applied to her." *Roulette v.*

14   *City of Seattle*, 97 F.3d 300, 312 (9th Cir. 1996).

15

16           **A.      Fourth Amendment Challenge**

17           Plaintiffs' Third Claim for Relief states, *inter alia*, that the "warrantless search of

18   the offices of Fortune Players Group . . . was objectively unreasonable, was unnecessary, .

19   . . and was in violation of the Fourth Amendment to the United States Constitution."

20   Compl. ¶ 44.  According to Defendants, "the questions then in this 'as applied' challenge

21   are as follows: A) whether Fortune Players Group's office could be the subject of such an

22   inspection; and, B) whether the conduct of that search was otherwise reasonable under the

23   Fourth Amendment.  The answer to both questions is yes."  Mot. at 14.

24           The Court disagrees with Defendants' quick affirmative conclusion, as it is clear to

25   the Court that reasonableness, generally, is a question for the fact-finder armed with

26   evidence from discovery, and is not proper for a motion to dismiss.  Furthermore, Plaintiffs

27   have identified several aspects of the search in question from the Complaint that, viewed in

28

United States District Court
Northern District of California

11

1    the light most favorable to Plaintiffs, could certainly be considered objectively

2    unreasonable, such as:

3       1.   Scope.  Plaintiffs contend that the search "did not identify with sufficient

4            particularity the records sought to be turned over."  Opp'n at 11.  Rather, the agents

5            questioned Ms. Parungao and Ms. De Los Reyes in order to determine which

6            records they wanted to seize, and downloaded a potentially greater amount of

7            information than could reasonably be necessary.  *Id*. at 14.  Furthermore, the agents

8            searched and seized Ms. De Los Reyes' personal planner, cell phone, and personal

9            bank account documents, and copied her private text messages.  Compl. ¶¶ 26-28.

10      2.   Duration.  Plaintiffs contend that the search "was unreasonably burdensome

11           because it lasted over four hours and required the two employees on site to stop

12           working and not answer business phone calls."  Opp'n at 11; Compl. ¶¶ 22, 26, 29.

13      3.   Means.  Plaintiffs contend that it could not be reasonably expected that a search

14           under Section 19827 would involve lengthy interrogations of two employees.

15           Opp'n at 11; Compl. ¶ 24-26.

16

17         Viewing the complaint in the light most favorable to Plaintiffs, the Court finds that

18   Plaintiffs have alleged plausible facts that the search conducted by Defendants was

19   unreasonable.  The reasonableness of the search is for the finder of fact to decide, armed

20   with evidence ascertained in discovery.  For these reasons, the Court finds that Plaintiffs

21   have sufficiently stated a claim for a violation of the Fourth Amendment.  Accordingly,

22   Defendants' motion to dismiss Plaintiffs' Third Claim for Relief is hereby DENIED.

23

24   ///

25   ///

26   ///

27   ///

28   ///

United States District Court
Northern District of California

United States District Court
Northern District of California

1         **B.**      **Fourteenth Amendment Challenge**

2         Plaintiffs' Fourth Claim for Relief states, *inter alia*, that the "warrantless search of

3 the offices of Fortune Players Group allowed the Bureau of Gambling Control unfettered

4 discretion, and failed to afford the requisite opportunity for a precompliance review, in

5 violation of the procedural due process clause." Compl. ¶ 45.[7]  At the outset, the Court

6 disagrees with Defendants' broad contention that a due process claim cannot stand to

7 challenge a search and seizure when the Fourth Amendment applies. *James Daniel Good*,

8 510 U.S. at 52 (finding that the Fourth Amendment "does not provide the sole measure of

9 constitutional protection," and even if the Fourth Amendment is satisfied, in some cases "it

10 remains for use to determine whether the seizure complied with our well-settled

11 jurisprudence under the Due Process Clause").

12         A state actor cannot deprive individuals of a property interest without procedural

13 due process. *Mathews v. Eldridge*, 424 U.S. 319, 332 (1976).  A section 1983 procedural

14 due process claim has three elements: "(1) a liberty or property interest protected by the

15 Constitution; (2) a deprivation of the interest by the government; (3) lack of process."

16 *Portman v. Cty. of Santa Clara*, 995 F.2d 898, 904 (9th Cir. 1993).  The type of process

17 due is "flexible" and depends on what the particular situation demands. *Mathews*, 424

18 U.S. at 334.  Plaintiffs allege that precompliance review was necessary, as discussed in

19 *Patel*.  Opp'n at 17-18 (citing *Patel*, 135 S.Ct. at 2452-54).  However, as discussed with

20 regard to Plaintiffs' facial challenges, the *Patel* Court notably did not find the inspection

21 regime at issue to be closely regulated such that business owners' reasonable expectation

22 of privacy is reduced.

23         Here, Plaintiffs have not sufficiently alleged why precompliance review was

24 necessary to safeguard Plaintiffs' constitutional rights.  Rather, the Court finds that the

25 procedural safeguards already in place within the statute – i.e., that the Bureau Chief must

26

27     <sub>7</sub>    The Court notes that Plaintiffs do not allege a violation of substantive due process in the Fourth Claim for Relief – rather their claim for substantive due process damages

28 based on "outrageous conduct" fell under the Sixth Claim for relief, which the parties stipulated to dismiss.  Compl. ¶ 47; Opp'n at 16 n.5.

1  approve all warrantless inspections conducted pursuant to Section 19827 – are sufficient.

2  *See* Cal. Bus. & Prof. Code § 19827(a)(1).  The Court further reiterates that the seizures at

3  issue were temporary and for investigative purposes; not permanent forfeitures.  Thus, in

4  this case, the Fourth Amendment is the proper vehicle to vindicate Plaintiffs' rights.

5      Plaintiffs have not alleged any other cognizable process that could be due, either

6  prior to the seizure or afterwards.  Accordingly, Plaintiffs' Fourth Claim for Relief fails as

7  a matter of law and is therefore DISMISSED.  Because the claim's deficiencies could not

8  be cured by amendment, the dismissal is with prejudice.

9

10 **CONCLUSION**

11     For the reasons discussed above, Defendants' motion to dismiss is GRANTED IN

12 PART AND DENIED IN PART.  The Court GRANTS Defendants' motion as to

13 Plaintiffs' First, Second and Fourth Claims for Relief; the claims are hereby DISMISSED

14 WITH PREJUDICE.  The Court DENIES Defendants' motion to dismiss Plaintiffs' Third

15 Claim for Relief.

16

17 **IT IS SO ORDERED.**

18

19 Dated:  08/02/16                              _____

20                                              THELTON E. HENDERSON
                                               United States District Judge

21

22

23

24

25

26

27

28

14

United States District Court
Northern District of California